FILED - WESTERN
CLERK, U.S. D[...]

DEC 1 5 2008

CENTRAL DISTRICT OF CAL[...]
BY

1
2
3
4
5
6
7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                       **WESTERN DIVISION**

11   DERRICK TYRONE MYERS,            )      No.  EDCV 06-1221-JSL (AGR)
                                      )
12                  Petitioner,       )
                                      )      ORDER ADOPTING MAGISTRATE
13        v.                          )      JUDGE'S REPORT AND
                                      )      RECOMMENDATION
14   KATHY MENDOZA-POWERS,            )
                                      )
15                  Respondent.       )
                                      )
16

17        Pursuant to 28 U.S.C. § 636, the Court has reviewed the entire file de novo,

18   including the Magistrate Judge's Report and Recommendation.  The Court agrees

19   with the recommendation of the magistrate judge.

20        IT IS ORDERED that the Magistrate Judge's Report and Recommendation is

21   adopted.

22        IT IS FURTHER ORDERED that (1) a conditional writ of habeas corpus is

23   granted as to Ground One; (2) Respondent shall permit Petitioner to withdraw his

24   plea in San Bernardino County Superior Court Case No. FSB041428, or shall release

25   Petitioner from custody, within sixty (60) days of the date the Judgment herein

26   becomes final, plus any additional delay authorized under state law; and (3) the

27   Petition is otherwise denied.

28   ///

1    IT IS FURTHER ORDERED that Judgment be entered accordingly.

2

3

4    DATED: _Dec 15, 2008_          _S pencer Letts_

5                                   J. SPENCER LETTS
                                    UNITED STATES DISTRICT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DERRICK TYRONE MYERS,                )      NO. EDCV 06-1221-JSL (AGR)
                                     )
            Petitioner,              )
                                     )
      v.                             )
                                     )      REPORT AND
KATHY MENDOZA-POWERS,                )      RECOMMENDATION OF UNITED
Warden,                              )      STATES MAGISTRATE JUDGE
                                     )
            Respondent.              )
_____)

The Court submits this Report and Recommendation to the Honorable J.

Spencer Letts, United States District Judge, pursuant to 28 U.S.C. § 636 and

General Order No. 05-07 of the United States District Court for the Central District

of California.  For the reasons set forth below, the Magistrate Judge recommends

the Petition for Writ of Habeas Corpus be granted.

///

///

///

///

///

///

# I.

## <u>SUMMARY OF PROCEEDINGS</u>

Petitioner pled guilty to robbery and petty theft with a prior.  On August 9, 2004, Petitioner was sentenced to 11 years, 4 months in state prison.  (Lodged Document "LD" 2 at 50.)  On June 15, 2005, the California Court of Appeal modified the sentence to ten years and otherwise affirmed the judgment.  (LD 7.)

On September 30, 2005, the California Supreme Court granted the petition for review.  (LD 11.)  On remand, the California Supreme Court ordered the Director of Corrections to show cause "why trial counsel was not ineffective in advising petitioner to enter a guilty plea to the charge of robbery in light of the lack of evidence to support the robbery charge, and why petitioner should not be allowed to withdraw his guilty plea to robbery."  (*Id.*)

On February 14, 2006, the trial court, on remand, did not conduct an evidentiary hearing.  The trial court found that "the crime [of robbery] had in fact not been committed by the Petitioner."  (LD 16 at 2.)  The trial court found that "Petitioner entered his plea to the robbery against counsel's advice."  (*Id.*)  "Trail (sic) counsel was not ineffective and did all in his power to persuade the Petitioner not to agree to the robbery charge."  (*Id.* at 3.)  Petitioner did not follow counsel's advice because of "his own eager desire to be temporarily released from custody."  (*Id.* at 2.)

On April 6, 2006, the California Court of Appeal denied the petition for writ of habeas corpus without explanation.  (LD 18.)  On June 21, 2006, the California Supreme Court denied the petition for review.  (LD 20.)

On November 7, 2006, Petitioner filed a Petition for Writ of Habeas Corpus By a Person in State Custody ("Petition") in this Court pursuant to 28 U.S.C. § 2254.  The Petition states two grounds: (1) ineffective assistance of counsel; and (2) a coercive plea agreement.  (Petition at 5 & Attachment #10.)  On February 12, 2007, Respondent filed an answer that admitted both claims are exhausted,

2

1   as Respondent understands the claims. (Answer at 2.) On March 13, 2007,
2   Petitioner filed a Reply.
3        On May 16, 2008, the Court granted Petitioner's request for an evidentiary
4   hearing. (Dkt. No. 13.) A status conference was held on June 12, 2008. (Dkt.
5   No. 16.) On September 10, 2008, the Court conducted an evidentiary hearing.
6   On October 6, 2008, Respondent filed a Notice of Supplemental Authority.
7        This matter has been taken under submission and is now ready for
8   decision.

## II.

## STATEMENT OF FACTS

### A.   Facts of Underlying Crime

12       Below are the facts set forth in the California Court of Appeal decision on
13   direct review. To the extent an evaluation of Petitioner's claims for relief depends
14   on an examination of the record, the Court has made an independent evaluation
15   of the record specific to Petitioner's claims for relief.
16   On October 13, 2003, a San Bernardino Rite Aid drug store security officer,
17   Thomas Rhodes, detained defendant as he exited the store when an
18   antitheft device located at the entrance activated. Rhodes noticed that
19   defendant's waistband appeared "bulky" and asked defendant what he had.
20   Defendant reached into his right rear pocket and removed two canisters of
21   deodorant.
22   Defendant was escorted back into the store by Rhodes and the store
23   manager, Olin Thrower. Once inside the store, Rhodes and Thrower told
24   defendant to empty his pockets. Defendant reached into the front of his
25   pants and removed six more canisters of deodorant.
26   Defendant pleaded with Rhodes not to call the police. When defendant
27   became agitated and tried to flee, Rhodes wrestled him to the ground and

28

handcuffed him.  San Bernardino Police Officer Mary Yanez responded to the scene and took defendant into custody.

(LD 7 at 3-4.)

**B.   State Proceedings**

On October 15, 2003, Petitioner was charged with felony petty theft with a prior.  (LD 2 at 1-2.)

### 1.   Preliminary Hearing

A preliminary hearing was held on November 10, 2003.  (*Id.* at 12.)  In addition to Count 1, the prosecutor asked the Court to hold Petitioner to answer to a violation of Cal. Penal Code § 211 (robbery).  (*Id.* at 23.)  However, the court held Petitioner to answer only on Count 1.  (*Id.*)

### 2.   Information Adding Robbery Count

On November 13, 2003, an information was filed against Petitioner adding a charge of robbery as Count 2.  (*Id.* at 28-31.)  Myers' counsel, William Dole, never filed a motion to dismiss the robbery count under Cal. Penal Code § 995. At the evidentiary hearing, Dole testified that the preliminary hearing evidence was insufficient to establish probable cause for robbery.  (Tr. at 11:20-25, 13:25-14:6.)[1]  Dole intended to file a motion to dismiss under § 995.[2]  (*Id.* at 16:7-17.) Dole could not explain why he did not file the motion.[3]  (*Id.* at 16:18-22.)

### 3.   Rejection of Plea Offer at Trial Readiness

On January 9, 2004, the matter came on for trial readiness.  (LD 2 at 35.) The prosecutor offered a plea of guilty to Count 1 for 16 months, admit one strike and double the term to 32 months, and Count 2 (robbery) would be dismissed.

---

[1]  "Tr." refers to the reporter's transcript of the evidentiary hearing dated September 10, 2008.

[2]  Dole's handwritten notes in Petitioner's case file referenced a 995 motion.  (Exh. 20 at 5; Tr. at 41:15-23.)

[3]  Dole testified "I had a number of cases I was involved in." (Tr. at 16:20.)

(LD 1 at 2-3.)  Petitioner responded:

> P:  May I ask a question?  There was never a robbery.  That's been –
>
> Court:  Mr. Myers, that's what's alleged on the Information.
>
> P:  No, there was never –

(*Id.* at 3.)  The court asked: "Mr. Myers, they're offering you 32 months.  Do you want it or not?  Petitioner responded, "No, sir."  (*Id.* at 4.)  Defense counsel stated that Petitioner wanted two years with no strike.  (*Id.* at 2.)

### 4.   Written Plea Agreement

On January 20, 2004, the parties notified the court that there was a signed plea bargain.  (LD 2 at 38.)  The written plea agreement provided that Petitioner "freely and voluntarily" entered into the plea "[b]ecause I am guilty . . . and" "[b]ecause the district attorney agreed" to certain sentencing terms.  (*Id.* at 45.)

Petitioner's attorney, Dole, signed the plea agreement.  (*Id.* at 46.)  The attorney statement on the plea agreement provided, among other things, that "I concur in the defendant's withdrawal of his plea of not guilty; and that I concur in the defendant's plea of guilty and/or admissions to the charge(s) as set forth by the defendant in the above declaration."  (*Id.*)  The matter was continued to April 12, 2004.  (*Id.* at 38, 45-46.)

### 5.   Plea Hearing

The plea hearing took place on April 12, 2004.  Dole did not appear.  (LD 1 at 5.)  The court stated: "Listen, I need a public defender or somebody.  Maybe they can stand in for Mr. Dole for purposes of this plea agreement on Mr. Myers."  (*Id.*)  Petitioner agreed.  (*Id.*)  A person identified as Mr. Poston indicated that "[t]here's a couple in the hallway.  I'll –" (*Id.* at 6.)

In the plea hearing transcript, there is no mention of an attorney appearing for Petitioner at the plea hearing until page 11 of the transcript, when the court addressed Steve Bremser after Petitioner pleaded guilty.  (*Id.* at 11.)  However, at ///

5

the evidentiary hearing, Bremser testified that he appeared at the plea hearing starting with page 6, line 7.  (Tr. at 100:2-9.)

In the plea hearing transcript, when the court inquired whether Bremser joins in the plea agreement, Bremser asked who signed the agreement.  The court responded, "Mr. Dole."  Mr. Bremser then joined in the plea agreement "[o]n behalf of Mr. Dole."  (LD 1 at 11.)

The court found that counsel joined in the plea agreement.  (*Id.* at 13.)  The court further found that a preliminary hearing established the factual basis for the entry of the plea.  (*Id.*)  The court indicated, however, that the agreed upon 11 year, 4 month term in the plea agreement was above the maximum sentence because of a merger of the two counts, which arose from the same incident.  The court "round[ed] it off at ten years."  (*Id.* at 14-15.)  The court sentenced Petitioner to 10 years in state prison on Count 2 (the upper term for robbery) and a concurrent sentence of 4 years on Count 1 (the mid-term for petty theft with a prior), with no explanation as to why the court chose the upper term for robbery.  (*Id.* at 15.)  The Court stayed execution of the sentence to May 20, 2004.  (*Id.* at 16.)  The court stated that if Petitioner returned on May 20, 2004 and complied with the probation office's requirements, his sentence would be reduced to 32 months.[4]  (*Id.*)  There was no audible response from Petitioner.  (*Id.*)  Petitioner signed an agreement to appear on May 20, 2004.  (LD 2 at 42-43.)

///

///

///

///

---

[4]   Under a *Vargas* waiver, a defendant is released from custody pending sentencing.  The defendant waives the right to withdraw his or her plea upon failure to appear at sentencing and agrees that a specified longer prison term may be imposed in the event of a failure to appear.  *People v. Vargas*, 223 Cal. App. 3d 1107, 273 Cal. Rptr. 48 (1990).

1

### 6.    Sentencing Hearing I

2     On May 20, 2004, Petitioner was in court at 8:30 a.m. at first calendar call

3 but was not present when the matter was called at 9:27 a.m.[5]  A bench warrant

4 was issued.  (*Id.* at 47.)

5

### 7.    Sentencing Hearing II

6     On August 9, 2004, Petitioner was represented by Kyung Kim.  Petitioner

7 admitted violating the *Vargas* waiver and waived his right to a hearing.  (LD 1 at

8 19.)  The court erroneously sentenced him to 11 years, 4 months.[6]  (LD 2 at 50.)

9 In the event the Court of Appeal reversed the upper term under *Blakely*, the court

10 imposed an alternative sentence based on the mid term of 7 years, 4 months.

11 (*Id.* at 51; LD 1 at 20.)

12

### 8.    State Habeas

13     On September 28, 2005, on state habeas, the California Supreme Court

14 transferred the matter to the Court of Appeal to issue an order to show cause,

15 returnable before the Superior Court, "why trial counsel was not ineffective in

16 advising petitioner to enter a guilty plea to the charge of robbery in light of the

17 lack of evidence to support the robbery charge, and why petitioner should not be

18 allowed to withdraw his guilty plea to robbery." (LD 11.)

19     The state courts' decisions on remand are the subject of the Petition before

20 this Court.

21

### III.

22

### STANDARD OF REVIEW

23     A federal court may not grant a petition for writ of habeas corpus by a

24 _____

25     [5]  Petitioner testified that he reported to probation but became homeless
and there was no way for probation to contact him for an interview.  (Tr. at 159:5-
26 14.)  A declaration by Mark Shoup, an attorney, indicates that, on May 20, 2004
before the hearing, he told Petitioner that the probation office recommended a
27 longer prison sentence than the agreed-upon 32 months.  (LD 4, Exh. C.)

28     [6]  On direct appeal, the Court of Appeal corrected the sentence to 10
years.  (LD 7 at 7-8.)

1  person in state custody with respect to any claim that was adjudicated on the

2  merits in state court unless it (1) "resulted in a decision that was contrary to, or

3  involved an unreasonable application of, clearly established Federal law, as

4  determined by the Supreme Court of the United States"; or (2) "resulted in a

5  decision that was based on an unreasonable determination of the facts in light of

6  the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

7  *Woodford v. Visciotti*, 537 U.S. 19, 21, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)

8  (per curiam).

9        "'[C]learly established Federal law' . . . is the governing legal principle or

10  principles set forth by the Supreme Court at the time the state court rendered its

11  decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed.

12  2d 144 (2003).  A state court's decision is "contrary to" clearly established

13  Federal law if (1) it applies a rule that contradicts governing Supreme Court law;

14  or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision

15  of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3,

16  8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  A state court's decision cannot be

17  contrary to clearly established Federal law if there is a "lack of holdings from" the

18  Supreme Court on a particular issue. *Carey v. Musladin*, 549 U.S. 70, 77, 127 S.

19  Ct. 649, 166 L. Ed. 2d 482 (2006).

20        Under the "unreasonable application prong" of section 2254(d)(1), a federal

21  court may grant habeas relief "based on the application of a governing legal

22  principle to a set of facts different from those of the case in which the principle

23  was announced." *Lockyer*, 538 U.S. at 76; *see also Woodford*, 537 U.S. at 24-26

24  (state court decision "involves an unreasonable application" of clearly established

25  federal law if it identifies the correct governing Supreme Court law but

26  unreasonably applies the law to the facts).

27        A state court's decision "involves an unreasonable application of [Supreme

28  Court] precedent if the state court either unreasonably extends a legal principle . .

8

1   . to a new context where it should not apply, or unreasonably refuses to extend

2   that principle to a new context where it should apply." *Williams v. Taylor*, 529

3   U.S. 362, 407, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

4       "In order for a federal court to find a state court's application of [Supreme

5   Court] precedent 'unreasonable,' the state court's decision must have been more

6   than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct.

7   2527, 156 L. Ed. 2d 471 (2003) (citation omitted). "The state court's application

8   must have been 'objectively unreasonable.'" *Id.* (citation omitted); *see also Clark*

9   *v. Murphy*, 331 F.3d 1062, 1068 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003).

10      "Factual determinations by state courts are presumed correct absent clear

11  and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated

12  on the merits in a state court and based on a factual determination will not be

13  overturned on factual grounds unless objectively unreasonable in light of the

14  evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v.*

15  *Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

16      In applying these standards, this Court looks to the last reasoned State

17  court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006).  To the

18  extent no such reasoned opinion exists, as when a state court rejected a claim in

19  an unreasoned order, this Court must conduct an independent review to

20  determine whether the decisions were contrary to, or involved an unreasonable

21  application of, "clearly established" Supreme Court precedent. *Delgado v. Lewis*,

22  223 F.3d 976, 982 (9th Cir. 2000).  If the state court declined to decide a federal

23  constitutional claim on the merits, this Court must consider that claim under a *de*

24  *novo* standard of review rather than the more deferential "independent review" of

25  unexplained decisions on the merits authorized by *Delgado*. *Lewis v. Mayle*, 391

26  F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim

27  state court did not reach on the merits).

28  ///

9

## IV.

## GROUND ONE:  INEFFECTIVE ASSISTANCE OF COUNSEL

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

When, as here, a defendant alleges ineffective assistance of counsel during a plea process, the two-part test in *Strickland* applies. *Wright v. Van Patten*, 128 S. Ct. 743, 746, 169 L. Ed. 2d 583 (2008); *Hill*, 474 U.S. at 57-58. First, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 56, 58. In other words, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (citation omitted).

Second, in the context of guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. A petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* For example, when counsel's alleged error is failure to advise a defendant of a potential affirmative defense, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* This inquiry should be made objectively.[7] *Id.* at 60.

The petitioner bears the burden of establishing both deficient performance and prejudice. *Williams*, 529 U.S. at 390-91; *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). The Court need not address

---

[7] It is unnecessary to conduct a harmless error review for *Strickland* claims. *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002), *cert. denied*, 538 U.S. 919 (2003).

10

1  both components if Petitioner makes an insufficient showing on one. *Strickland*,
2  474 U.S. at 694.

3         There is a narrow exception to *Strickland*'s requirement of prejudice. The
4  exception applies "'when . . . the likelihood that any lawyer, even a fully
5  competent one, could provide effective assistance is so small that a presumption
6  of prejudice is appropriate without inquiry into the actual conduct of the trial.'"
7  *Wright*, 128 S. Ct. at 746 (citation omitted). "[O]ne circumstance warranting the
8  presumption is the 'complete denial of counsel,' that is, when 'counsel [is] either
9  totally absent, or prevented from assisting the accused during a critical stage of
10  the proceeding.'" *Id.* (citations omitted). In *Wright*, the Supreme Court held that
11  counsel's participation in the plea hearing by speaker phone did not constitute a
12  complete denial of counsel. *Id.*

13         Under a claim of ineffective assistance of counsel, issues of counsel's
14  deficient performance and prejudice are mixed questions of law and fact that are
15  not entitled to a presumption of correctness. *Strickland*, 466 U.S. at 698. Such
16  legal conclusions are evaluated to determine whether the state court decision is
17  contrary to, or an unreasonable application of, clearly established Supreme Court
18  precedent. 28 U.S.C. § 2254(d)(1); *Weaver v. Palmateer*, 455 F.3d 958, 965 (9th
19  Cir. 2006) ("we review for objective unreasonableness the state court's
20  conclusions as to whether counsel's performance was deficient or resulted in
21  prejudice"), *cert. denied*, 128 S. Ct. 177 (2007); *Lambert v. Blodgett*, 393 F.3d
22  943, 978 (9th Cir. 2004), *cert. denied*, 546 U.S. 963 (2005).

23         However, the state court's factual findings made in the course of resolving
24  claims of ineffective assistance of counsel are entitled to a presumption of
25  correctness. *Id.* at 977. When, as here, the Court has held an evidentiary
26  hearing at which new evidence was admitted, factual determinations by state
27  courts are presumed correct absent clear and convincing evidence to the
28  contrary. 28 U.S.C. § 2254(e)(1). The findings cannot be overturned unless the

1  state court findings constitute unreasonable determinations of the facts.  *Id.* §
2  2254(d)(2).

3        Accordingly, a court's first task is to "separate the legal conclusions from
4  the factual determinations that underlie it."  *Lambert*, 393 F.3d at 977-78.

5        Petitioner alleges ineffective assistance of counsel at two stages of the
6  proceedings:

7      (1) At the plea stage, Petitioner contends that he signed the plea
8          agreement on January 20, 2004, based on Dole's deficient advice.  At
9          the plea hearing on April 12, 2004, Petitioner received no advice as to
10         whether to enter a guilty plea because Dole did not show up.
11         Bremser did not know Petitioner's case and gave no advice as to
12         whether he should enter a guilty plea.

13     (2) At the sentencing hearing on August 9, 2004, Kim was deficient in
14         advising Petitioner not to file a motion to withdraw his plea.[8]

15 **A.**    <u>**Deficient Performance**</u>

16       This is an unusual case in that Petitioner relies on the transcript of the plea
17 hearing and the written plea agreement, and Respondent is left to rely on
18 subsequent contradictory statements by counsel.

19       The trial court made factual findings that (1) "Petitioner entered his plea to
20 the robbery against counsel's advice"; and (2) "Trail (sic) counsel . . . did all in his
21 power to persuade the Petitioner not to agree to the robbery charge."  (LD 16 at
22 2-3.)

23       The state court's fact-finding process is undermined when the state court
24 has before it, yet apparently ignores, evidence that supports Petitioner's claim.
25 *Miller-El*, 537 U.S. at 346.  In this case, the state court's failure is compounded by
26

27      [8]  Because this Court finds ineffective assistance of counsel at the plea
28 stage, it is unnecessary to address the ineffective assistance of counsel at the
sentencing stage.

12

a legal standard that accords Petitioner's evidence significant weight.  *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir.) (state court findings made under a misapprehension as to correct legal standard), *cert. denied*, 543 U.S. 1038 (2004).  In addition, when, as here, "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts."  *Id.*  Thus, "[a] federal court can disagree with a state court's credibility determination and, when guided by the AEDPA, conclude the decision was unreasonable."  *Id.* at 1000 (citation and quotation marks omitted).

At Petitioner's plea hearing, the court expressly found that Petitioner's plea was "joined by their counsel." (LD1 at 13.)  The court's finding was based on counsel's representation on the record that "On behalf of Mr. Dole, I so join." (*Id.* at 11.)  The written plea agreement contains an "attorney statement," signed by Dole, that "I concur in the defendant's withdrawal of his plea(s) of not guilty; and that I concur in the defendant's plea(s) of guilty and/or admissions to the charge(s) as set forth by the defendant in the above declaration." (LD 2 at 46.)

The state habeas court's decision completely ignored these factual findings made at the plea hearing, which supported Petitioner's claim that his counsel advised him to take the plea.  *See Miller-El*, 537 U.S. at 346.  The Supreme Court has stated that findings made by the judge accepting the plea "constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).  Courts generally credit statements made at the plea hearing over subsequent contrary assertions.  *See Womack v. McDaniel*, 497 F.3d 998, 1004 (9th Cir. 2007) (citing *United States v. Rivera-Ramirez*, 715 F.2d 453, 458 (9th Cir. 1983)), *cert. denied*, 128 S. Ct. 928 (2008).

///

13

1   The state court's fact-finding process was defective in that it made contrary
2   findings without holding an evidentiary hearing, and without giving Petitioner an
3   opportunity to present evidence and examine witnesses.  The state habeas court
4   had before it three different versions of counsel's advice: (1) counsel's
5   contemporaneous joinder in the plea as set forth above in the plea hearing
6   transcript dated April 12, 2004, and written plea agreement dated January 20,
7   2004; (2) Dole's statement to Petitioner's counsel on December 14, 2004, that he
8   could not recall Petitioner's case (LD 4, Exh. E at 2); and (3) Dole's declaration to
9   Respondent's counsel after remand from the California Supreme Court, which
10   disclosed for the first time that "I told Mr. Myers not to take the plea bargain." (LD
11   13, Exh. 1 ¶ 5, dated December 21, 2005.)

12   Respondent argues that Petitioner invited the trial court's error by arguing
13   that the trial court could grant the state habeas petition based on the pleadings
14   alone.  However, Respondent misreads Petitioner's brief.  Petitioner clearly
15   stated that "[i]f the court . . . believes it is essential to resolve the question
16   concerning the advice that Mr. Dole gave petitioner, the court should order an
17   evidentiary hearing." (LD 15 at 16.)  In Petitioner's view, the court could grant the
18   habeas writ "without definitely deciding that question" by relying on Dole's
19   signature on the plea agreement and the fact that Petitioner "had the appearance
20   but not the reality of the assistance of counsel" at the plea hearing due to
21   Bremser's admitted ignorance of the case. (*Id.* at 15-16.)  The trial court did not
22   accept Petitioner's invitation and, therefore, should have held an evidentiary
23   hearing to resolve the question of what counsel advised Petitioner.

24   Moreover, the newly admitted evidence at the evidentiary hearing here
25   constitutes clear and convincing proof that the state habeas court's factual finding
26   that trial counsel advised Petitioner not to take the plea bargain was in error.
27   ///
28   ///

14

At the evidentiary hearing, Bremser (the attorney who stood in for Dole at the plea hearing) testified to three material points.  First, Bremser confirmed that he represented to the trial court that counsel joined in the plea.  (Tr. at 86:24-25.) Dole told Bremser that he signed the plea agreement and asked Bremser to have the court approve the plea.  (*Id.* at 82:14-21.)

Second, Bremser did not recall Dole saying that he advised against the plea.  (*Id.* at 93:24-94:1)  Bremser testified that, had he known Dole advised against the plea,  Bremser's approach at the plea hearing would have been different.  (*Id.* at 94:2-4.)  Dole testified that he did not recall speaking to Bremser. (*Id.* at 35:23-36:1.)  Dole identified his handwritten notes in Petitioner's case file (Exh. 20), which is available to other public defenders who represent Petitioner. (Tr. at 41:15-23, 58:8-19, 78:22-79:6.)  There is no handwritten notation that Dole advised against the plea.  (Exh. 20 at 3.)

Third, Bremser came to the plea hearing without knowing the facts of the alleged crimes, and without having reviewed the preliminary hearing transcript or police report.  (Tr. at 84:24-85:8.)   Bremser did not advise Petitioner whether or not to enter into the guilty plea.  (*Id.* at 96:8-19, 103:13-23.)  Bremser testified that had he known the facts of the case, it would have changed the way he handled the case and would have prompted him to discuss with Petitioner "whether it was a good idea to enter into the plea bargain agreement or not."  (*Id.* at 93:14-23.) Accordingly, the state court's finding that trial counsel advised against the plea is indisputably incorrect as to Bremser.

The first time Dole disclosed that he allegedly advised against the plea was in a declaration after the California Supreme Court's remand.  Dole's statement that he advised against the plea bargain is not credible and cannot be squared with the evidence.  As discussed above, Dole signed the plea agreement.  (LD 2 at 46.)  Dole wrote in the case file that "we fill out plea bargain" and made no notation that he had advised Petitioner not to take the plea bargain.  (Exh. 20 at

15

1    4.)  On cross-examination, Dole testified that he did not record every single

2    communication and the details of every transaction.  (Tr. at 52:3-15.)  However,

3    advising a defendant against a plea is not a detail or immaterial.  Other notations

4    in the case file indicated when an event occurred over the attorney's objection.

5    (*E.g.*, Exh. 20 at 1, 4, 6.)  In addition, Dole did not tell Bremser orally that he

6    advised against the plea.  Bremser represented to the court (and Petitioner) on

7    the record at the plea hearing that counsel joined in the plea.  (LD 1 at 11.)  Dole

8    did not explain why he did not communicate orally or in writing that he had

9    advised against the plea, or why he put his colleague in a position to

10   misrepresent to the court and Petitioner that counsel joined in the plea.  Counsel

11   certainly could have told the court that he did not join in the plea.  *See, e.g.,*

12   *People v. Lovings*, 118 Cal. App. 4th 1305, 1309, 13 Cal. Rptr. 3d 710 (2004)

13   (counsel stated on the record that he refused to join in the plea).  The sequence

14   of events in this case makes sense only if Dole advised Petitioner to take the plea

15   – it makes no sense if Dole advised against the plea.

16          The Court observed Dole's demeanor at the evidentiary hearing and the

17   inconsistencies in his testimony.  (*E.g.*, Tr. at 50:2-19, 52:25-53:17, 65:1-12, 67:7-

18   22.)  For example, Dole testified that the prosecutor came up with the idea of the

19   plea bargain with a *Vargas* waiver when he and Petitioner showed up for trial.

20   (*Id.* at 28:4-31:6, 50:2-7.)  On the other hand, Dole acknowledged telling

21   Respondent's counsel that he (Dole) told the prosecutor that Petitioner wanted

22   out of custody as part of a plea **before** the prosecutor offered the plea bargain.

23   (*Id.* at 50:8-19, 70:13-23.)  If Dole had actually proposed that idea to the

24   prosecutor, it would be inconsistent with Dole's testimony that he "unfortunately"

25   had to tell his client about a plea bargain with a *Vargas* waiver that he viewed as

26   being "very dangerous."  (*Id.* at 31:21-32:2, 50:20-25, 70:8-72:13.)

27          Accordingly, the state habeas court's findings that counsel advised against

28   the plea bargain and did all he could to convince Petitioner not to plead guilty was

16

"an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[9]  28 U.S.C. § 2254(d)(2).  The state habeas court's findings were rebutted by clear and convincing evidence. *Id.* § 2254(e)(1).

Because of its factual findings, the state court did not address whether counsel's advice to take the plea agreement was deficient. *See Panetti v. Quarterman*, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007).

As noted above, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (citation omitted).  Petitioner has satisfied his burden.  It was deficient for counsel to advise Petitioner to enter into the plea agreement.  The plea required Petitioner to plead guilty to the most serious charge with the longest prison sentence, for a robbery he did not commit.[10]  (LD 16 at 2; Tr. at 11:20-25, 13:25-14:6.)  The plea contained a *Vargas* waiver with a maximum sentence greater than Petitioner could have received had he (1) gone to trial, lost on all counts, and received the maximum upper term prison sentence of 10 years; or (2) gone to trial, lost on all counts and received the mid-term prison sentence of 6 years; or (3) gone to trial, lost only on petty theft with a prior,

---

[9]  Dole also appeared to acknowledge that he could have attempted to convince Petitioner not to plead guilty after Petitioner signed the plea agreement. (Tr. at 37:15-22.)  Dole did not do so.  (*Id.* at 35:16-18; LD 21 ¶ 6; Exh. 20.)  "[A] plea bargain is ineffective unless and until it is approved by the court."  *In re Alvernaz*, 2 Cal. 4th 924, 941, 8 Cal. Rptr. 713 (1992).  A defendant is free to withdraw from a plea agreement before it is approved by the court. *People v. Anderson*, 129 Cal. App. 3d 491, 495, 181 Cal. Rptr. 68 (1982) ("If the defendant had changed his mind and had been unwilling to waive his constitutional rights, the court could not have imposed the bargain over his objection.").  A plea is "accepted and final only at the moment that the judge made the requisite factual findings and accepted the plea." *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) (interpreting California law).

[10]  This was not a plea under *People v. West*, 3 Cal. 3d 595, 91 Cal. Rptr. 385 (1970).  In the plea agreement, the box was crossed out for a plea of guilty "[a]s a result of plea bargaining after discussing with my attorney the possibility of my being convicted on other or more serious charges and/or risking the possibility of a longer sentence."  (LD 2 at 45 ¶ 9b.)  In Petitioner's case, he was pleading guilty to all charges, robbery was the most serious charge, and robbery carried the longest prison sentence.

17

Even assuming that the state court's finding is entitled to deference,[11] Petitioner has satisfied his burden of rebutting the finding with clear and convincing evidence that counsel's "constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Bremser testified at the evidentiary hearing that, had he known the facts of the case, it would have changed the way he handled the case and would have prompted him to discuss with Petitioner "whether it was a good idea to enter into the plea bargain agreement or not." (Tr. at 93:14-23.)

Bremser's testimony makes sense in light of the plea agreement's terms. The shortcomings of a plea agreement may show "that [the defendant] made the unfavorable plea on the constitutionally defective advice of counsel." *Bradshaw v. Stumpf*, 545 U.S. 175, 186, 125 S. Ct. 2398, 162 L. Ed. 2d 1143 (2005). At the evidentiary hearing, Dole admitted that the maximum prison sentence under the plea agreement – 11 years, 4 months – was *longer* than (1) the maximum 10-year prison sentence Petitioner could have received had he gone to trial, lost on all counts (including robbery), and been sentenced to the upper term; and (2) the maximum 6-year prison sentence Petitioner could have received had he gone to trial, lost on petty theft with a prior (but not robbery), and been sentenced to the upper term. (Tr. at 21:24-22:6, 70:3-8.)

At the evidentiary hearing, Dole testified that he advised Petitioner to turn down an earlier, more favorable plea offer for a maximum prison term of 32 months, and Petitioner did so. (*Id.* at 23:14-24:17.)

///

---

[11] The state court did not analyze the prejudice prong based on the premise that counsel advised Petitioner to enter into the plea agreement. (LD 16.) Therefore, it is arguable that federal habeas review is not circumscribed by the state court's conclusion as to prejudice. *See Wiggins*, 539 U.S. at 534; *Id.* at 528-29. However, because the outcome is the same whether or not the state court's factual finding is accorded deference, this Court will assume the state court is entitled to deference.

1    There is no evidence in the record that Petitioner sought temporary release

2    from custody for a specific reason, such as a family emergency or to attend a

3    funeral.  At the evidentiary hearing, Dole testified that Petitioner was dressed for

4    trial and prepared to proceed to trial on the trial date.  (*Id.* at 31:10-15, 55:20-22.)

5    Petitioner also testified that he was prepared to go to trial.  (*Id.* at 124:12-19.)

6    The trial court relied solely on a defendant's general desire to be released.

7    At the evidentiary hearing, Dole testified: "Like I think anybody wants to get out of

8    custody," including Petitioner.  (*Id.* at 49:3-11.)  Dole testified that, out of the 3000

9    clients he had over his career, only one did not want to get out of custody.  (*Id.* at

10   48:14-24.)  This argument, however, would render any plea agreement that

11   includes a *Vargas* waiver immune from challenge because the temporary release

12   from custody would automatically preclude a finding of prejudice.[12]  Petitioner

13   agreed that he wanted to be released from custody, meaning "I wanted less time

14   in prison."  (*Id.* at 140:21-24.)  A *Vargas* waiver does not mean less time in prison

15   and, in fact, carries with it a risk of a much longer term in prison.

16   Unlike the state court, this Court had the opportunity to observe Petitioner's

17   demeanor at the evidentiary hearing.  Petitioner testified that he reads at the third

18   grade level according to prison testing and that he completed the sixth grade at

19   school.  (*Id.* at 120:23-121:2.)  Petitioner testified that he did not want the plea

20   deal, and that he did not want to go to prison for that long.  (*Id.* at 123:3-25,

21   125:2-4, 151:9-13.)  However, Dole said "[t]o take the deal and go home."[13]  (*Id.*

22   at 125:2-6, 151:14-15.)  If Dole had told him not to take the deal, Petitioner

23

24   [12]  Moreover, temporary release from custody pending sentencing may be
25   obtained without a *Vargas* waiver in a plea agreement.  *See People v. Murray*, 32
     Cal. App. 4th 1539, 1545, 39 Cal. Rptr. 2d 7 (1995).

26   [13]  In a January 13, 2006 declaration, Petitioner stated that "he wasn't
     extremely anxious to go home."  (LD 15, Exh. A at 2.)  The "only reason"
27   Petitioner took the deal was because Dole told him to take it.  (*Id.* at 2-3.)  In a
     February 21, 2006, declaration, Petitioner stated that he "did not take the plea
28   bargain, out of eagerness to go home" but "took the deal only because [Dole]
     recommended it, and otherwise I would have insisted on a trial."  (LD 21 at 2.)

credibly testified that he would have turned it down and gone to trial.[14]  (*Id.* at
126:7-9.)

On this record, "there is at least a reasonable probability that . . .
[Petitioner] would have insisted on going to trial rather than pleading to the
offense to which he did." *Moore v. Czerniak*, 534 F.3d 1128, 1150 (9th Cir.
2008).[15]  Accordingly, Petitioner has established that he was prejudiced by his
counsel's deficiencies and is entitled to a writ on Ground One.

## V.

## GROUND TWO:  COERCIVE PLEA BARGAIN

"A guilty plea operates as a waiver of important rights, and is valid only if
done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the
relevant circumstances and likely consequences.'" *Bradshaw*, 545 U.S. at 183
(citation omitted). "[T]he court taking a defendant's plea is responsible for
ensuring 'a record adequate for any review that may be later sought.'" *Id.* (citation
omitted).

"Where, as here, a defendant is represented by counsel during the plea
process and enters his plea upon the advice of counsel, the voluntariness of the
plea depends on whether counsel's advice 'was within the range of competence
demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (citation omitted).

Although Petitioner acknowledges he entered the plea based on advice of
counsel, he argues that the plea agreement is coercive as to an indigent
defendant based on the *Vargas* waiver in the plea agreement. (Reply at 25-27.)
Petitioner has not cited any case authority for the proposition that a *Vargas*
waiver is coercive.  A state court's decision cannot be contrary to clearly

[14]  Bremser did not discuss with Petitioner why he was taking the plea
agreement. (Tr. at 87:4-7.) Bremser testified that he remembered Petitioner
saying that he had gone over the agreement with Dole. (*Id.* at 96:22-24.)

[15]  Petitioner could also establish prejudice if he would have obtained a
more favorable plea bargain. *Moore*, 534 F.3d at 1150 n. 26.

1  established Federal law if there is a "lack of holdings from" the Supreme Court on

2  a particular issue.  *Carey*, 549 U.S. at 77; *Wright*, 128 S. Ct. at 747.  Therefore,

3  federal habeas relief is unavailable for Ground Two.

## VI.

## RECOMMENDATION

6          For the reasons discussed above, it is recommended that the District Court

7  issue an Order (1) adopting this Report and Recommendation; (2) granting the

8  Petition with respect to Ground One; (3) denying the Petition in all other respects;

9  and (4) issuing a conditional writ of habeas corpus as follows:  Within ninety days

10 of this judgment becoming final (meaning the conclusion of any and all appeals),

11 Respondent shall permit Petitioner to withdraw his plea in Los Angeles Superior

12 Court Case No. FSB041428, or shall release Petitioner from custody.

14 DATED: November 17, 2008

ALICIA G. ROSENBERG
United States Magistrate Judge

22

1

## NOTICE

2      Reports and Recommendations are not appealable to the Court of Appeals,

3  but are subject to the right of any party to file Objections as provided in the Local

4  Rules Governing Duties of Magistrate Judges, and review by the District Judge

5  whose initials appear in the docket number.  No Notice of Appeal pursuant to the

6  Federal Rules of Appellate Procedure should be filed until entry of the Judgment

7  of the District Court.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23